1999 OK 21

**ENI PRODUCING PROPERTIES PROGRAM LIMITED PARTNERSHIP 1982-I, a Washington limited partnership, By and Through its general partner, BAY-TIDE PETROLEUM, INC., an Oklahoma corporation, Appellant,**

v.

**SAMSON INVESTMENT COMPANY, Samson Resources Company, and Eason Drilling Company, Appellees.**

No. 90,045.

Supreme Court of Oklahoma.

March 30, 1999.

Steven A. Heath, Mysock & Chevaillier, Tulsa, Oklahoma, for Appellant,

Matthew L. Standard, James A. Kirk, Kirk & Chaney, Oklahoma City, Oklahoma, for Appellees.

SIMMS, J:

¶ 1 Appeal from the trial court's grant of summary judgment in favor of Defendant/Appellees, Samson Investment Co., Samson Resources Co., and Eason Drilling, Co.[1] Appellant, ENI Producing Properties Program Limited Partnership 1982–I(ENI), brought this action against Samson Investment and two of its wholly owned subsidiaries claiming breach of a joint operating agreement, breach of fiduciary duty of cotenant/operator and fraud.

¶ 2 After summary judgment was granted in Samson's favor, ENI appealed. The Court of Civil Appeals, in a memorandum opinion, reversed the grant of summary judgment, finding a question of fact remained with regard to the fraud claim asserted by ENI. The Court of Civil Appeals agreed with the trial court's grant of summary judgment on ENI's non-fraud claims.

¶ 3 This Court granted certiorari to review the following issue: Did Samson, the unit operator, commit fraud against ENI, a working interest owner, thereby breaching a fiduciary duty to notify ENI that the United States solicited bids for the lease of a future estate mineral interest in 1988, three years prior to the 1991 possessory vesting of the interest in the United States. We note this is the only issue upon which certiorari was sought and the only one for which certiorari was granted.

¶ 4 We find Samson perpetrated no fraud and owed no such duty to ENI. The opinion of the Court of Civil Appeals is vacated. The summary judgment granted by the trial court is affirmed.

¶ 5 ENI, Appellant, is a working interest owner in an oil and gas well in Roger Mills County. The unit in question is known as the Abraham No. 1–22 Unit. It is subject to a communitization agreement.

¶ 6 In 1941 the original owners of the Abraham unit deeded their lands and the attendant mineral interests to the United States, but the owners reserved a fifty year estate in the mineral interests. The original owners' fifty year interest was then leased for a term, expiring in 1991. It is the lease corresponding to this term mineral interest which was operated by Samson Resources.

¶ 7 The basic thrust of ENI's complaint is that Samson campaigned for and then

---

1. These entities will be collectively referred to as Appellee or Samson throughout this opinion. Where applicable, Appellee's may be referred to individually as Samson Investment, Samson Resources or Eason.

caused the future interest of the mineral estate to be auctioned three years prior to the vesting date and then purchased the future interest without notifying ENI or allowing ENI to participate in the lease with the U.S.

¶ 8 The U.S. future mineral interest in the Abraham 1–22 unit was purchased by Eason Drilling, a subsidiary of Samson, for $448,000.00 through a public bidding process in October 1988.

¶ 9 ENI claimed the acquisition of the future interest was an extension or renewal of the existing lease, which was provided for in the operating agreement as follows:

> If any party secures a renewal of any oil and gas lease subject to this Agreement, all other parties shall be notified promptly, and shall have the right for a period of thirty (30) days following receipt of such notice in which to elect to participate in the ownership of the renewal lease, insofar as such lease affects lands within the Contract Area, by paying to the party who acquired it their several proper proportionate shares of the acquisition costs allocated to that part of such lease within the Contract Area, which shall be in proportion to the interests held at that time by the parties in the Contract Area.

Operating Agreement, an A.A.P.L. form 610—Model Form, Article VII(B), "Renewal or Extension of Leases".

¶ 10 We do not agree with ENI's assertion that the renewal and extension provisions of the joint operating agreement apply to the lease of a future interest from the United States. The acquisition of a lease of a future interest, maturing upon expiration of a term reservation, simply is not a renewal or extension of an existing lease.

¶ 11 We find nothing in the Parties' contract which would impose obligations or rights with regard to the future mineral interest of the United States. We cannot expand the contract to include obligations or rights which the parties themselves did not delineate. *British American Oil Producing Co. v. Midway Oil Co.*, 183 Okla. 475, 82 P.2d 1049, 1053 (1938); *Tenneco Oil Co. v. Bogert*, 630 F.Supp. 961, 968 (W.D.Okla.1986); *Frankfort Oil Co. v. Snakard*, 279 F.2d 436,

443 (10th Cir.1960), *cert. denied*, 364 U.S. 920, 81 S.Ct. 283, 5 L.Ed.2d 259 (1960).

¶ 12 ENI takes its fraud claim one step beyond the contract; arguing regardless of the contract's language, Samson owed a minimal duty of fair play, which required Samson to give notice of the early solicitation to ENI. This argument is premised upon ENI's status as beneficiary in the fiduciary relationship with Samson. In addition, ENI argues that fraud is always a question of fact, making summary judgment on the issue of fraud improper.

¶ 13 With regard to the first part of ENI's fraud argument this Court agrees with ENI's basic premise that "the relationship between the unit and its operator (unit) and the royalty owners is fiduciary in nature." *Leck v. Continental Oil Co.*, 1989 OK 173, 800 P.2d 224, 229 (citing *West Edmond Hunton Lime Unit v. Young*, 1958 OK 19, 325 P.2d 1047, 1052). However, a well operator's fiduciary duty is not without boundaries; the duty is created by the unitization agreement. *Leck*, 800 P.2d at 229.

> [This Court has] recognized the existence of a fiduciary duty owed by a unit to the royalty owners and lessees who are parties to the unitization agreement or subject to the order creating the unit. This is not a duty created by the lease agreement but rather by the unitization order and agreement.

*Id.* As a result, the agreement defines the limits of the duty.

¶ 14 *Leck* states there is an inherent duty on the part of the operator "to develop the lease as a prudent operator" and "safeguard the correlative rights of the various interest holders." *Id.* at 228. However, these inherent duties, described in *Leck*, relate to the operation of the unit. The present controversy, which takes issue with the acquisition of the United States' future interest, does not involve Samson's operation of the unit. Consequently, any duty of Samson or right of ENI relating to the acquisition of this future interest, which is outside the unit operation, must be accounted for in the Parties' agreement; which is contrary to ENI's argument that duty extends beyond the contract due to the Parties' fiduciary status.

¶ 15 In a case analogous to the present one, *Colpitt v. Skelly Oil Co.*, 1972 OK 11, 499 P.2d 415, the unit operator acquired a lease on an adjoining tract, and did not include the owners of the operated unit in the acquisition. The case did not involve any drainage issues and this Court found the operator had no duty to account to the unit owners for profits realized from the adjoining tract. *Colpitt* emphasized the significance of the joint operating agreement and the defining role it played in outlining the operator's duties.

¶ 16 Although the present case involves the operator's acquisition of a lease within the unit area, *Colpitt* is still analogous because of the separate nature of the future estate acquired by Samson and the absence of language in the joint operating agreement relating to the future estate. The focus in both *Colpitt* and the present case must be the agreement made between the parties and not a universal, far reaching, blanket of fiduciary duty. We decline to shroud the present parties with fiduciary rights and obligations which have not been set forth in their agreement.

¶ 17 The record clearly indicates all Parties were aware that the lease upon which they operated was a term reservation and inevitably the future interest would mature in 1991. Armed with this most basic information, ENI could have requested the future estate be addressed in the joint operating agreement. Whether the parties intentionally left out language addressing the future interest or unwittingly neglected to account for it, this Court is nonetheless constrained by the agreement.

¶ 18 ENI's second argument, fraud is always a question of fact and therefore summary judgment is improper, presumes Samson owed ENI a duty. However, ENI cannot support the fraud claim, which is premised on a failure to inform, unless it first establishes Samson had a duty to inform. *Silk v. Phillips Petroleum Co.*, 1988 OK 93, 760 P.2d 174, 179 ("silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation; there must have been an obligation to speak"). Whether Samson owed the duty can be de-termined, in this case, as a matter of law. Therefore, summary judgment is proper.

¶ 19 We find Samson owed no duty to ENI with regard to acquisition of the future estate mineral interest. · As a result, summary judgment on ENI's claim of fraud was proper; fraud cannot lie absent duty. *Silk,* 760 P.2d at 179.

¶ 20 CERTIORARI PREVIOUSLY GRANTED. COURT OF CIVIL APPEALS OPINION VACATED. JUDGMENT OF THE TRIAL COURT AFFIRMED.

HARGRAVE, V.C.J., and HODGES, LAVENDER, KAUGER, and WATT, JJ., concur.

OPALA and ALMA WILSON, JJ., concur in part, dissent in part.

SUMMERS, C.J., concurring in judgment:

For my analysis of whether the relationship between operators and mineral interest owners is fiduciary in nature, see *Goodall v. Trigg* 1997 OK 74, 944 P.2d 292, 295, (Summers, V.C.J., concurring in result).